## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

_____
                                        )
In re                                   )     **CHAPTER 11**
                                        )
**STONE & WEBSTER, INC.,** *et al.,*    )
                                        )
                                        )     **CASE NO. 00-02142 (PJW)**
                         Debtors.       )     **(Jointly Administered)**
_____)
                                        )
**CONSOLIDATED SWINC ESTATE, and**      )
**SWE&C LIQUIDATING TRUST**             )
                                        )
              Plaintiffs,               )
                                        )
          v.                            )
                                        )
**ACE USA, INC., and**                  )
**CENTURY INDEMNITY COMPANY,**          )
                                        )
              Defendants.               )     **ADVERSARY NO. 07-50390**
_____)

### REPLY TO THE SWINC ADMINISTRATOR'S AND
### SWE&C LIQUIDATING TRUST'S RESPONSE IN OPPOSITION
### TO THE MOTION OF DEFENDANT CENTURY INDEMNITY
### COMPANY FOR WITHDRAW OF REFERENCE PURSUANT TO 28 U.S.C. § 157(d)

Defendant, Century Indemnity Company ("**Century**"), as successor to CCI Insurance Company as successor to Insurance Company of North America on its own behalf and as successor-in-interest to Indemnity Insurance Company of North America, by its attorneys, replies to the SWINC Plan Administrator's and the SWE&C Liquidating Trust's Response in Opposition to the Motion of Century Indemnity Company for Withdraw of Reference Pursuant to 28 U.S.C. § 157(d) (the "**Response**"), as follows:

**Preliminary Statement**

1.    The positions taken by plaintiffs, the SWINC Plan Administrator and the SWE&C Liquidating Trust (collectively, "Plaintiffs"), in their Response seem to ignore (a) the clearly stated positions of Century in the Motion of Defendant for Withdraw of Reference Pursuant to 28 U.S.C. § 157(d) (the "Motion to Withdraw")[1]; (b) the record before the Bankruptcy Court in this bankruptcy case; and (c) the relevant and binding case law in this Circuit which undermines Plaintiffs' positions.

**Response Fails to Address the Valid Bases for
Withdraw of the Reference as Set Forth in the Motion to Withdraw**

2.    In the Motion to Withdraw, and the accompanying motion to determine that this Adversary Proceeding is non-core (the "Non-Core Motion"), Century agrees that the Bankruptcy Court has non-core jurisdiction over this Adversary Proceeding.  *See* Motion at ¶ 13; Exhibit "A" to Motion to Withdraw.

3.    Notwithstanding the above, the Plaintiffs dedicate five pages of the Response to their assertion that the Bankruptcy Court has non-core jurisdiction over this Adversary Proceeding.  Plaintiffs cite a number of cases to support their contention that the Bankruptcy Court may exercise "related to jurisdiction" over this Adversary Proceeding.  As set forth in the Motion to Withdraw, this is the test to determine whether "non-core" jurisdiction exists.  It is not clear why Plaintiffs feel the need to include five pages of legal argument just to agree with Century's assertion that non-core jurisdiction exists.

4.    Where the parties differ is on the question of whether core jurisdiction exists.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion to Withdraw.  All references to the Approval Order, the Confirmation Order, the Non-Core Motion and the Settlement Order shall refer to those respective exhibits to the Motion to Withdraw which are incorporated herein by reference.

Century correctly contends that this Adversary Proceeding, that involves a dispute over insurance coverage for pre-petition claims under pre-petition policies, is non-core. *See In re U.S. Brass, 110* F.3d 1261 (7th Cir. 1997). Although the authorities cited in the Response support the existence of non-core jurisdiction, Plaintiffs are unable to cite any binding authority in support of their assertion that the issues involved in this Adversary Proceeding fall within the core jurisdiction of the Bankruptcy Court. As more fully set forth in the Motion to Withdraw and the Non-Core Motion, this insurance coverage dispute in simply not a core matter.

5.    Plaintiffs' assertion that "Century suggests that cause exists to withdraw the reference simply because the Adversary Proceeding is purportedly non-core," Response at ¶ 24, ignores Century's express contention that withdrawal of the reference of this Adversary Proceeding is appropriate because:

    (a)    This Adversary Proceeding is a non-core proceeding;

    (b)    Withdrawal of the reference promotes judicial economy and efficiency; and

    (c)    Withdrawal of the reference promotes convenience and expedites the bankruptcy process.

6.    Furthermore, in the Motion to Withdraw, Century expressly asserts that the other factors considered by the Third Circuit do not militate against withdrawing the reference in this case. *See* Motion to Withdraw at ¶ 18.

## The Response Either Fails to Consider or Ignores the Record in the Bankruptcy Case

7.    Perhaps because the record before the Bankruptcy Court undermines virtually all of Plaintiffs' arguments opposing the withdrawal of the reference, Plaintiffs conveniently ignore the well established record in the Bankruptcy Court which shows that the Bankruptcy Court

never considered, and purposefully avoided any of the issues that are the subject of this Adversary Proceeding.

8.    In the Response, Plaintiffs contend that denial of the Motion to Withdraw will promote uniformity in the bankruptcy administration because:

> The Bankruptcy Court is also familiar with the NEC/SU Claims and the NEC/SU Settlement, the facts of which give rise to the Claims asserted in the adversary proceeding. Specifically, the Bankruptcy Court oversaw discovery and held an evidentiary hearing in connection with the NEC/SU Settlement, which required it to address the complex issues underlying the NEC/SU Settlement and the NEC/SU Claims and to consider the objection of Defendant Century to the NEC/SU Settlement. Only after consideration of the evidence and objections raised, [sic]the Bankruptcy Court ultimately concluded that the NEC/SU Settlement was fair and reasonable and in the best interest of the Debtors' Estates.

*See* Response at ¶ 38. Based on the foregoing unsupported assertions, Plaintiffs contend that the Bankruptcy Court has "an intimate knowledge of the Bankruptcy Case, the relevant parties to this Adversary Proceeding, the basis for the Consolidated Estates' claims against Defendants, and the insurance coverage at issue in the Adversary Proceeding." *See* Response at ¶ 39. Plaintiffs assertions flatly ignore the record in the Bankruptcy Case.

9.    The standard that a debtor must meet to obtain court approval of a settlement in a bankruptcy case is low. In assessing whether a compromise is reasonable, the court need not conduct a "mini trial on the merits . . . of [the] settlement." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr.S.D.N.Y. 1991). *See also In re Energy Coop., Inc.*, 886 F.2d 921, 927 n. 6 (7th Cir. 1989). Instead, the obligation of the court is to "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *Drexel Burnham*, 134 B.R. at 497 (quoting *In re W.T. Grant Co.*, 669 F.2d 599, 608 (2d Cir.

1983), *cert. denied; Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89 (1983); *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595 (E.D.Pa. 1992).

10.    A number of insurers opposed the motion to approve the NEC/SU Settlement (the "Motion for Approval") because, based upon the limited and expedited discovery allowed in connection with the Motion for Approval, it appeared that the factual assertions contained in the proofs of claim filed by NEC and SU did not support the stipulated settlement amount.  Rather than hear a challenge on this basis, the Bankruptcy Court chose to include a provision in the Settlement Order providing that such Order would have no binding effect on the Debtors' insurers in any subsequent coverage dispute.  *See* Transcript of Hearing Held on December 18, 2003 on Motion for Approval (the "Transcript"), relevant portions of which are  attached hereto as Exhibit "A" at pp. 164-165; Approval Order at ¶ ¶ 10,11.

11.    At the hearing on the Motion for Approval, the focus of the Bankruptcy Court was solely upon whether the NEC/SU Settlement was a good deal for the Debtors.  The Bankruptcy Court indicated that it was not concerned whether the settlement is for $5 million or $15 million because the amount "is not going to come out of the Debtors' pocket."  *See* Transcript at pp. 159-160.  Thus, the Bankruptcy Court concluded, the settlement satisfied the admittedly low standard for approval of settlements in bankruptcy cases.

12.    The record in this case clearly demonstrates that the objections of Century and other insurers to the NEC/SU Settlement were never resolved but were reserved for another day in another court.  The Bankruptcy Court stated:

> THE COURT:  Let me see if I can cut through this.  I've made it very clear that if the coverage litigation were before me, I absolutely would not permit anyone to argue that the allowed claim pursuant to the settlement has any relevance.

> MR. HOWARD:  Yes, sir.
>
> THE COURT:  So, why can't I just put that in this order, that it will not have any relevance?  It will not have any res judicata effect.  It will not have any collateral estoppel effect in any subsequent proceeding in which the insurance carriers, non-parties to the settlement, are the subject of a recovery claim?

*See* Transcript at pp. 164-165; Settlement Order at ¶ 10,11.

13.     Therefore, the coverage issues, of which Plaintiffs contend the Bankruptcy Court has an "intimate knowledge", were never addressed at any stage of the Bankruptcy Case and are wholly unrelated to the issues addressed in connection with confirmation of the Debtors' Plan or approval of the NEC/SU Settlement.

14.     In support of their contention that refusing to withdraw the reference in this Adversary Proceeding will discourage forum shopping, Plaintiffs assert only that Century has been avoiding good-faith negotiation of a settlement of its liability for "claims in which their [sic] liability was made clear under the NEC/SU Settlement."  *See* Response at ¶ 40.  While Century disagrees with Plaintiffs' characterization of its conduct, Plaintiffs fail to state how an alleged refusal to engage in settlement negotiations would constitute "forum shopping" or why a bankruptcy court, rather than a district court is better suited to deal with such alleged conduct.

15.     Next, Plaintiffs contend that:

> [T]he Bankruptcy Court is familiar with the parties to the Adversary Proceeding, the Claims underlying the Consolidated Estates' coverage demand to the Defendants, and the NEC/SU Settlement itself, which forms the basis of the Consolidated Estates' coverage demand.  The Bankruptcy Court also has resolved claims against other insurance carriers in the bankruptcy case.

*See* Response at ¶ 41.

16.     Contrary to these assertions, and similar to Plaintiffs' assertions with respect to

the uniformity issue, there is no history of insurance coverage disputes before the Bankruptcy Court. The Bankruptcy Court is certainly familiar with the parties to the Adversary Proceeding, however, it purposefully and correctly declined to make any findings whatsoever related to the availability of insurance coverage to pay the claims that were the subject of the NEC/SU Settlement. In addition, the Court did not **resolve** any insurance coverage disputes in the Bankruptcy Case. The Court did approve a settlement with Royal Insurance Company (the "Royal Settlement") but, in doing so, the Bankruptcy Court was only required to assure that the settlement, like the NEC/SU Settlement, exceeded the "lowest point in a range of reasonableness." *In re Drexel Burnham, supra.* No "mini trial" on the merits of the respective parties' positions was undertaken by the Bankruptcy Court.

17.    In support of their contention that retaining the Adversary Proceeding in Bankruptcy Court fosters an economic use of resources, Plaintiffs fail to address the duplication of effort that a *de novo* review of the dispute will entail and, instead, argue that this Court should allow the same court that oversaw confirmation of the Plan and approval of the NEC/SU Settlement to "interpret and apply the terms of the Joint Plan and the NEC/SU Settlement in the context of the Adversary Proceeding." *See* Response at ¶ 42.

18.    As set forth above, it is not necessary to apply the terms of the Plan or the NEC/SU Settlement Agreement to resolve the dispute which is at issue in the Adversary Proceeding. In fact, the Bankruptcy Court expressly included language in the Confirmation Order and in the Settlement Order expressly reserving the rights of the Debtors and their insurers under the very pre-petition policies that are at issue in this Adversary Proceeding. *See* Confirmation Order at ¶ 40; Settlement order at ¶¶ 10, 11.

19.    Neither, as Plaintiffs contend, does the Bankruptcy Court have "unmatched

familiarity" with the coverage issues underlying the Adversary Proceeding.  The Bankruptcy

Court purposely and correctly avoided deciding the non-core coverage issues that it did not need

to resolve in connection with the confirmation of the Plan or approval of the NEC/SU Settlement

and approval of the Royal Settlement.

20.     In support of the assertion that denial of the Motion to Withdraw will expedite the

bankruptcy process, Plaintiffs contend that the Bankruptcy Court "has addressed numerous

insurance-related disputes, including the analysis of insurance policies, analysis of proofs of

claim asserted by various insurance companies, and approval of settlements resolving insurance

claims and insurance-related disputes (including the NEC/SU Settlement)."  *See* Response at ¶

45.  As set forth above, however, this assertion is simply not true.  *See* Approval Order at ¶¶ 10,

11; Confirmation Order at ¶ 40.

21.     Plaintiffs insistence that approval of the NEC/SU Settlement resolved insurance-

related issues, evidences either a lack of familiarity with the proceedings leading up to the

approval of the NEC/SU settlement or a calculated attempt to mischaracterize the nature of the

proceedings before the Bankruptcy Court.  *See* Settlement Order at ¶¶ 10 and 11; Transcript at

pp. 164-165.

22.     With the exception of the NEC/SU Settlement which, as stated above, did not

resolve, but expressly left open, any insurance-related issues, Plaintiffs cite no specific instance

in which the Bankruptcy Court purportedly resolved any insurance-related issues.

**Plaintiffs' Response Is Contrary to Controlling Third Circuit Precedent**

23.     Plaintiffs' Response fails to consider or purposely avoids relevant case law which

supports the Motion to Withdraw.

24.     Citing provisions in the Debtors' Plan and the NEC/SU Settlement Agreement,

Plaintiffs contend that the Bankruptcy Court expressly retained "exclusive jurisdiction" over issues raised in the Adversary Proceeding and that the Adversary Proceeding is "inextricably linked" to the Plan and the NEC/SU Settlement Agreement.  *See* Response at ¶ 30.  This assertion is contrary to both the record below and controlling Third Circuit authority.  The Third Circuit has stated:

> Retention of jurisdiction provisions will be given effect, assuming there is Bankruptcy Court jurisdiction.  But neither the Bankruptcy Court nor the parties can write their own jurisdictional ticket.  Subject matter jurisdiction "cannot be conferred by consent of the parties."  Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.  Similarly, if the court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating that it has jurisdiction in a confirmation or other order.

*In Re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004) (citations omitted).  Accordingly, a bankruptcy court cannot wrest jurisdiction from a district court over non-core matters by reserving "exclusive jurisdiction" in a confirmation order or an order approving a settlement.

25.     In fact, the very Plan provision cited by Plaintiffs in their Response acknowledges such limitations on the Bankruptcy Court's powers.  *See* Confirmation Order at ¶35 (providing that the Bankruptcy Court retains exclusive jurisdiction "to the fullest extent permitted by law").

26.     Plaintiff's reliance upon a similar provision in the Settlement Order approving the NEC/SU Settlement is likewise misplaced.  The Settlement Order provides that "this Court shall retain jurisdiction ***to determine the reasonableness of a proposed settlement*** between the Debtors and their primary insurers with regard to the allowed remediation claim ***to the extent that the Claimants disapprove*** of any such settlement."  *See* Settlement Order at ¶ 8 (emphasis added).  This narrowly tailored reservation of jurisdiction is neither applicable to the issues raised in this Adversary Proceeding nor binding on this Court.  *In re Resorts International,*

*supra.*

**Conclusion**

27.     For the foregoing reasons, and for the reasons set forth in the Motion to

Withdraw, Defendant, Century Indemnity Company, respectfully requests this Court to enter an

Order withdrawing the reference with respect to this Adversary Proceeding, and for such other

and further relief as is just.

Respectfully submitted,

Dated:  April 6, 2007                                  **WHITE AND WILLIAMS LLP**


  /s/ Marc S. Casarino
Marc S. Casarino (No. 3613)
824 N. Market Street, Suite 902
Wilmington, DE 19801
(302) 467-4520

Thomas Going*
Joseph Gibbons, *pro hac vice*
John Lawson*
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Philadelphia, PA 19103
(215) 864-7000
*not yet admitted *pro hac vice*

**Attorneys for Century Indemnity Company**

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

FILED

2003 DEC 30  AM 11: 05

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 00-02142 |
| | ) | |
| STONE & WEBSTER, INC., | ) | Courtroom No. 2 |
| et al., | ) | 824 Market Street |
| Debtors. | ) | Wilmington, Delaware 19801 |
| | ) | |
| | ) | December 18, 2003 |
| | ) | 9:38 A.M. |

TRANSCRIPT OMNIBUS HEARING
BEFORE HONORABLE PETER J. WALSH
UNITED STATES CHIEF BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:                Skadden, Arps, Slate, Meagher & Flom
                                By:  GREGG GALARDI, ESQ.
                                One Rodney Square
                                P.O. Box 636
                                Wilmington, Delaware 19899

                                Skadden, Arps, Slate, Meagher & Flom
                                By:  GARY RUBIN, ESQ.
                                     EDWARD MEEHAN, ESQ.
                                1440 New York Avenue, N.W.
                                Washington, District of Columbia 20005

                                Howrey Simon Arnold & White, LLP
                                By:  LARA DEGENHART, ESQ.
                                     LESTER BROWN, ESQ.
                                1299 Pennsylvania Avenue, N.W.
                                Washington, DC 20004-2402

The U.S. Trustee:               Office of the U.S. Trustee
                                By:  MARGARET L. HARRISON, ESQ.
                                844 King Street
                                Wilmington, Delaware 19899

ECRO:                           Sherry Scaruzzi

        Proceedings recorded by electronic sound recording,
            transcript produced by transcription service.

---

**TRANSCRIPTS PLUS**
435 Riverview Circle, New Hope, Pennsylvania 18938
e-mail CourtTranscripts@aol.com

215-862-1115    (FAX) 215-862-6639



Appearances:
(continued)


For Travelers:                   Connolly Bove Lodge & Hutz, LLP
                                 By:  MICHELLE McMAHON, ESQ.
                                 1220 Market Street, 10th Floor
                                 Post Office Box 2207
                                 Wilmington, Delaware 19899

                                 Bingham McCutchen
                                 By:  BEN KROWICKI, ESQ.
                                 One State Street
                                 Hartford, Connecticut 06103-3178

                                 Wiley Rein & Fielding LLP
                                 By:  THEODORE A. HOWARD, ESQ.
                                 1776 K Street, NW
                                 Washington, DC 20006-2304

For Equity Committee:            Bifferato Bifferato & Gentilotti
                                 By:  CONNOR BIFFERATO, ESQ.
                                 1308 Delaware Avenue
                                 Post Office Box 2165
                                 Wilmington, Delaware 19899-2165

                                 Bell Boyd & Lloyd
                                 By:  CARMEN LONSTEIN, ESQ.
                                 Three First National Plaza
                                 Suite 3300, 70 West Madison Street
                                 Chicago, Illinois 60602

For Maine Yankee:                Pierce Atwood
                                 By:  WILLIAM J. KAYATTA, JR., ESQ.
                                 One Monument Square
                                 Portland, Maine 04101

For Federal:                     Manier & Herod
                                 By:  THOMAS PENNINGTON, ESQ.
                                 One Nashville Place Suite 2200
                                 150 Fourth Avenue North
                                 Nashville, Tennessee 37219-2494

                                 Duane Morris, LLP
                                 By:  RICHARD W. RILEY, ESQ.
                                      MICHAEL R. LASTOWSKI, ESQ.
                                 1100 North Market Street, Suite 1200
                                 Wilmington, Delaware 19801

Appearances:
(Continued)


For AIG:                        Cozen O'Connor
                                By:  MICHAEL HYNES, ESQ.
                                Chase Manhattan Centre
                                1201 North Market Street, Suite 1400
                                Wilmington, Delaware 19801


For Isobord:                    Pepper Hamilton
                                By:  EDWARD C. TOOLE, ESQ.
                                3000 Two Logan Square
                                Eighteenth and Arch Streets
                                Philadelphia, Pennsylvania 19103-2799

                                Pepper Hamilton
                                By:  AARON A. GARBER, ESQ.
                                1201 Market Street, Suite 1600
                                Wilmington, Delaware 19899


For Weitz/Asbestos              Campbell & Levine
                                By:  MARK T. HURFORD, ESQ.
                                1201 Market Street, 15th Floor
                                Wilmington, Delaware 19801

                                Weitz & Luxenberg
                                By:  SANDERS McNEW, ESQ.
                                180 Maiden Lane
                                New York, New York 10038


For Southern Union              McCarter & English
Company:                        By:  WILLIAM TAYLOR, ESQ.
                                Mellon Bank Center
                                Post Office Box 111
                                Wilmington, Delaware 19899

                                Lathrop & Gage, LC
                                By:  STEPHEN K. DEXTER, ESQ.
                                2345 Grand Boulevard, Suite 2800
                                Kansas City, Missouri 64108-2612

                                Kasowitz, Benson, Torres & Friedman
                                By:  ADAM L. SHIFF, ESQ.
                                1633 Broadway
                                New York, New York 10019

Appearances:
(Continued)

For Royal & Sun                Seward & Kissel LLP
Alliance:                      By:  RONALD COHEN, ESQ.
                               One Battery Park Plaza
                               New York, New York 10004

                               Zelle, Hofmann, Voelbel, Mason & Gette
                               By:  KARL S. VASILOFF, ESQ.
                               950 Winter Street, Suite 1300
                               Waltham, Massachusetts 02451

For the Shaw Group:            Ashby & Geddes
                               By:  GREGORY TAYLOR, ESQ.
                               222 Delaware Avenue, 17th Floor
                               Wilmington, Delaware 19801

For St. Paul/USF&G:            Choate, Hall & Stewart
                               By:  DOUGLAS GOODING, ESQ.
                               53 State Street
                               Boston, Massachusetts 02109-2804

For Creditors'                 Landis Rath & Cobb
Committee:                     By:  ADAM G. LANDIS, ESQ.
                                    KERRI MUMFORD, ESQ.
                               The Brandywine Building
                               1000 West Street, Suite 1410
                               Wilmington, Delaware 19801

For PBGC:                      Office of the General Counsel
                               Pension Benefit Guaranty Corporation
                               By:  NATHANIEL RAYLE, ESQ.

For the Unsecured              Orrick, Herrington & Sutcliffe
Creditors' Committee:          By:  LORRAINE McGOWEN, ESQ.
                                    JAMES HOUPT, ESQ.
                               666 Fifth Avenue
                               New York, New York 10103

For Ace:                       White and Williams
                               By:  MARC CASARINO, ESQ.
                                    JOE GIBBONS, ESQ.
                               824 North Market Street, Suite 902
                               P.O. Box 709
                               Wilmington, Delaware 19899-0709

4A

Appearances:
(continued)

For Narragansett                The Bayard Firm
Electric:                       By:  NEIL GLASSMAN, ESQ.
                                222 Delaware Avenue, Suite 900
                                P.O. Box 25130
                                Wilmington, Delaware 19899-5130

                                Patton Boggs
                                By:  BOB JONES, ESQ.
                                     JOHN VOORHEES, ESQ.
                                Suite 1900, 1660 Lincoln Street
                                Denver, Colorado 80264

For S&W:                        Hughes Hubbard

For TIG and London              Murphy Spadaro & Landon
Market Insurers:                By:  JOHN L. PARSHALL, ESQ.
                                824 Market Street, Suite 700
                                P.O. Box 8989
                                Wilmington, Delaware 19899

                                Mendes & Mount, LLP
                                By:  ROBERT KEANE, ESQ.
                                750 Seventh Avenue
                                New York, New York 10019

<u>INDEX</u>

|  | DIRECT | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| <u>WITNESS FOR THE DEBTORS</u> | | | | | |
| JAMES CARROLL | | | | | |
| By Mr. Meehan | 98/119 | | 154 | | |
| By Mr. Krowicki | | 140 | | 156 | 118/129 |

| <u>EXHIBITS</u> | | <u>ID</u> | <u>EVID</u> |
|---|---|---|---|
| D-33 - 36 | Documents | 105 | 105 |
| D-2 | Proofs of claim | 108 | 110 |
| D-8 | Motion filed by Narragansett | 108 | 110 |
| D-9 | Letter from Patton Boggs | 108 | 110 |
| D-1 | Proof of claims | 111 | 112 |
| D-3 | Amended objection and motion | 112 | 112 |
| D-4 | Response of Southern Union | 112 | 112 |
| D-14 | Propositions to predecessors | 115 | 116 |
| D-26 | Propositions to predecessors | 115 | 116 |
| D-27 | Propositions to predecessors | 115 | 116 |
| D-19 | Federal investigations | 116 | 125 |
| D-38 | Determination by EPA | 121 | 125 |
| D-17 | Public background information | 123 | 125 |
| D-18 | Complaint | 123 | 125 |
| D-11 | Escrow agreements | 127 | 127 |
| D-12 | Escrow agreements | 127 | 127 |
| D-20 | Summary of cost prepared by claimant | 128 | 130 |
| D-21 | Summary of cost prepared by claimant | 128 | 130 |
| D-24 | Bank statement | 133 | 133 |
| D-25 | Letter | 134 | 135 |
| D-5 | Debtors' motion | 136 | 137 |
| D-39 | Black line comparison of Tabs 6 and 7 | 137 | 137 |
| D-6 | Settlement agreement | 137 | 137 |
| D-7 | Settlement agreement | 137 | 137 |
| D-30 | Supplement to Mr. Black's deposition | 156 | 156 |

1          MR. KROWICKI:  Your Honor, we have a witness that we

2    would like to put on.  He is an expert witness.  As you heard

3    earlier today, or as you heard in the course of Mr. Carroll's

4    testimony, there were depositions taken last week, Friday, of

5    the representatives of the environmental claimants.  We learned

6    in the course of those depositions and, in fact, Your Honor can

7    see for himself because those transcripts have been admitted

8    that, in fact, the witnesses engaged in a process -- and Mr.

9    Meehan and I could disagree to some degree about what the

10   process is.  But the process was essentially gather documents

11   and give them to counsel.  And counsel, in fact, came up with

12   the exhibits that were admitted here this morning.

13          So, in terms of the types of documentary evidence

14   that were submitted to counsel, with regard to the math, we

15   didn't have a witness from the environmental claimants who

16   could give us information sufficient to get behind these

17   figures.

18          What we then did was we engaged the services of an

19   expert.  That expert, in a very, very quick turnaround, looked

20   at all the documents that it provided to us, prepared a report

21   identifying specifically all the documents he had looked at,

22   what his opinions and conclusions were, that report was

23   forwarded to debtors' counsel on Monday, I believe Monday

24   evening.  A deposition was scheduled for -- excuse me.  The

25   document was -- the report was provided on Tuesday.  A

1  deposition was scheduled with the consent and approval of

2  debtors' counsel for Wednesday, yesterday at two o'clock.  We

3  learned yesterday at about 11 o'clock that the debtors had

4  declined to go forward with the deposition.  It is my

5  understanding based on some brief conversations with Mr. Meehan

6  that they intend to object to the witness testifying.  I see no

7  basis for that.  The report was as complete as it could have

8  been under the circumstances and it was fairly complete.  It

9  was provided timely.  A deposition was scheduled and counsel

10 could have had his go at our expert yesterday and could have

11 been fully prepared to do whatever he wanted to do by way of

12 cross examination today.  It was counsel's election -- I was

13 here a month ago, I asked for a lot of time to do discovery in

14 this case.  The Court declined to provide us with that time.

15          We're here today.  We did the discovery we needed to

16 do in a very truncated time period.  Mr. Howard is here.  He's

17 had additional communications with other counsel to the debtor,

18 including California counsel for Howrey Simon and he can

19 supplement my presentation to the Court this morning and he

20 would, in fact, question the witness.  But it is certainly our

21 view that this is important, that this is germane.  The debtor

22 has indicated that actual remedial costs are -- and, of course,

23 we could quibble with Mr. Meehan about this, about to the

24 extent to which it's a factor, but it is certainly an important

25 factor.  Because actual remediation costs are stated in the

1  motion, introduced as a full exhibit by Mr. Meehan this morning

2  -- are introduced as the touchstone, the benchmark for the

3  allowed claim.

4          It is ultimately the $15 million that debtors would

5  presumably try to hold against Travelers or other insurers in

6  subsequent proceedings.  We think that the testimony is very

7  important, it goes right to the heart of this matter.  And

8  having had the opportunity to depose the expert, having

9  declined to do so, I don't believe there's any basis upon which

10  this witness' testimony should be excluded at this point.

11          THE COURT:  What is this witness' expertise?

12          MR. KROWICKI:  He's a forensic accountant, Your

13  Honor.  And, frankly, I haven't been involved in his

14  preparation and I would ask that if the Court has specific

15  questions about the expert, that they be directed to Mr.

16  Howard.

17          THE COURT:  Okay.  Well, let me see -- I'm trying to

18  figure out where the insurance company's coming from.  Let's

19  say that your witness demonstrates that the maximum recovery

20  for these claimants is $5 million.  What am I supposed to do,

21  determine that the $15 million allowed claim is unreasonable

22  and, therefore, they can't have a settlement?

23          MR. KROWICKI:  Yes, Your Honor.

24          THE COURT:  The problem I have is -- I'm trying to

25  figure out whether it makes any difference whether the allowed

1    claim is five million or 15 because it's not going to come out

2    of the debtors' pocket.

3         MR. KROWICKI:  Well, Your Honor, from our

4    prospective, as long as there is no preclusive affect against

5    the insurers, this allowed claim could be five million, 15

6    million or 50 million.  But admittedly, it's not going to come

7    out of the pocket of the debtors but, again, to the extent that

8    the figure is in any way, shape or form going to be used

9    offensively against the insurers, then it is of significance to

10   the insurers as a third party.  And we certainly believe, and

11   we've argued this in our objection, that this Court must and

12   should consider the effect of its finding on the insurers.

13        And if, in fact, -- we went through a rather

14   painstaking analysis of those provisions of the order this

15   morning, and I don't think Mr. Galardi or Mr. Meehan would

16   dispute their intention to use the $15 million figure against

17   the insurers at some later date.

18        THE COURT:  How could they possibly use that figure

19   in a later proceeding?

20        MR. KROWICKI:  Your Honor, you are -- my heart is

21   warming as I --

22        THE COURT:  You've registered your objection.

23        MR. KROWICKI:  My heart is warming as --

24        THE COURT:  You're not a party to the settlement.

25        MR. HOWARD:  Your Honor, may I be heard just for a

1  second to assist my counsel here?

2          MR. KROWICKI:  I beg you allow him to do so, Your

3  Honor.

4          MR. HOWARD:  The issue --

5          MS. SCARUZZI:  Sir, state your name.

6          MR. HOWARD:  I'm sorry.  My apologies.  My name is

7  Ted Howard, Your Honor, Wiley Rein & Fielding in Washington,

8  DC.

9          The issue arises all the time in insurance coverage

10  disputes in which there is a -- in which the nature of the

11  dispute between the carrier and the policyholder is such that

12  the policyholder is claiming you should have defended me, you

13  didn't, you left me in the lurch, I made my own deal.  And now

14  you're not entitled to come in and collaterally attack the

15  reasonableness of the deal that I made.

16          What these folks would like to do as a level of

17  additional force or weight to that type of argument by saying

18  not only do we contend that you left us in a lurch and left us

19  on our own such that we had to cut our own deal and you're not

20  entitled to collaterally attack it because it's fair and

21  reasonable, but, Judge, the bankruptcy judge so held, and his

22  holding that this settlement was fair and reasonable is

23  entitled to res judicata or collateral estoppel effect.  That's

24  it in a nutshell.  And what we are attempting to tell you is

25  simply this:  They didn't corroborate $15 million in

1  remediation costs.  That is the premise or the settlement that
2  they are asking you to find is fair and reasonable.

3       If you do so without evidence as to the
4  reasonableness of that figure, they are then able to use that
5  against us without ever having had to prove in any forum that
6  the $15 million was a reasonable amount.  And what we're saying
7  is if you want to call it 15 million, even though it's a lot
8  closer to ten, fine.  Just don't try to bind us and don't try
9  to have this Court endorse a figure which you haven't shown.
10 It's as simple as that.

11      MR. MEEHAN:  Your Honor, we're well into legal
12 argument, but I think Mr. Galardi already addressed that.

13      Let me cut through the issue with the expert.  I'm
14 not going to go back through a lot of history.  For a period of
15 weeks over many, many efforts, we tried to identify whether any
16 of these folks was going to put up a witness.  I'll give you my
17 view and let's state for the record that they won't agree with
18 it, period.  They refuse to talk.

19      Now, way late in the game, they said, yes, we do have
20 an expert.  And we said, we'll take a deposition.  I just
21 wanted to state on the record we don't think that they gave
22 proper notice.  We don't think they complied with Rule 26.  The
23 report that they provided to us doesn't provide all the
24 information Rule 26 requires.  Those objections are preserved
25 for the record to the extent they ever need to be.

1       But in deference to the Court and in effort to move
2   this efficiently, we are prepared simply to have those
3   objections noted and to move on.

4       I would suggest, given the representations from
5   counsel, that the report is complete and sets forth all the
6   views that the report be adopted as is directed.  And if
7   anybody wants to ask him a question, they can.  My own view is
8   I might have a question or two.  But I think when you read the
9   report, what you're going to see is he tied out every single
10  dollar.  And there is two conclusions of note:

11      One, he offers no opinion on whether the $2 million
12  from Southern Union is compensable under the environmental
13  laws.  No opinion.  Period.  Full stock.

14      And as to the $13 million from Narragansett, he
15  offers an opinion that approximately 10.2 million is tied to
16  environmental costs if one assumes that the escrow is proper.
17  That's it in a nutshell.

18      So, if that's his direct testimony, with that, we're
19  fine.

20      MR. HOWARD:  Your Honor, just responding briefly, if
21  the proffer -- if the report can be entered into evidence, in
22  lieu of direct testimony, I don't think we have a problem with
23  that.  I would quibble with Mr. Meehan's conclusion in the
24  sense that -- for the $2.2 million in costs allegedly incurred
25  by Southern Union, because every invoice and every attorney

1  bill that was offered to support those costs is completely
2  redacted in terms of the time descriptions, our expert did, in
3  fact, conclude that it's impossible to tell how exactly these
4  amounts were spent. And we don't know whether they were spent
5  on litigation or in mediation, with regard to the underlying
6  environmental sites, and we don't even know that the amounts
7  incurred were spent with respect to the sites that are the
8  subject of the settlement. There's just no way to tell because
9  they redacted everything.

10         And with regard to the Narragansett costs, I believe
11 that the conclusion is that even if one assumes that every
12 element asserted by Narragansett goes into the proper figure,
13 including the escrow, notwithstanding the fact that -- I
14 believe you'll see in the testimony of their own witness that
15 they continue to believe that they may have a right to fully
16 recover those amounts, that the amount comes out at something
17 along the lines of 10.2 million. Such that if you add it all
18 up, it's something in the neighborhood of $13 million and
19 change, which is pretty far short of the $15 million alleged.

20         THE COURT: Let me see if I can cut through this.
21 I've made it very clear that if the coverage litigation were
22 before me, I absolutely would not permit anyone to argue that
23 the allowed claim pursuant to the settlement has any relevance.

24         MR. HOWARD: Yes, sir.

25         THE COURT: So, why can't I just put that in this

1  order, that it will not have any relevance?  It will not have

2  any res judicata effect.  It will not have any collateral

3  estoppel effect in any subsequent proceeding in which the

4  insurance carriers, non-parties to the settlement, are the

5  subject of a recovery claim?

6           MR. HOWARD:  That's exactly what we're asking you to

7  do, Your Honor.

8           MR. GALARDI:  Your Honor, our only -- Your Honor can

9  do that.  I, again -- I understand what Your Honor's view is.

10  I understand that if I ever made a motion to ask for that, Your

11  Honor would rule that way.  I don't think -- two things about

12  that:  One, if you want to put it in, it's your order, you can

13  do that.  But I don't think you can put it in that any other

14  court has to come to the same conclusion.  I don't think that

15  is an issue.

16           You've stated on your record what your opinion is.

17  And we'll have to accept that if a settlement gets approved.

18  But I don't think we can say that not only for any subsequent

19  proceeding in this court before you that you combine any

20  subsequent proceeding with respect to any other court where

21  you're not the judge.

22           THE COURT:  Well, I can say it is not this Court's

23  intent that this settlement --

24           MR. GALARDI:  You can say that.

25           THE COURT:  -- would have any binding affect on

166

1  anybody other than the two parties -- or I should say the
2  claimants and the debtor.

3          MR. GALARDI:  Or, Your Honor, I mean let's be
4  careful.  They are creditors.  It is binding on other
5  creditors.  We have litigated, for 9019 purposes, the fairness.
6  That is --

7          THE COURT:  Well, it's binding on other creditors,
8  including the insurance carriers, as creditors of the estate.

9          MR. GALARDI:  That's fine, Your Honor.  I understand
10 --

11         THE COURT:  But that's not the same thing as their
12 capacity as insurers of the debtors' obligations arising out of
13 these claims.

14         MR. GALARDI:  Your Honor, if you want to come to that
15 legal conclusion, I accept that.  I understand I won't be in
16 here and winning on that argument if I'm with you.  I will not
17 accept it for other courts.  I cannot accept it for other
18 courts.  We have a very strong position on coverage.  We
19 believe that it is covered.  It will have whatever minimum, de
20 minimis or substantial value it has with another court.  I
21 don't know.  I'm not insurance counsel.  I understand what you
22 believe it has with respect to you in subsequent proceedings.
23 And I understand you can say in an order, it is not your
24 intention to find for other courts.  It's your order.

25         But we, the debtors, will not agree that it has